## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.  _____

SUN CUISINE, LLC d/b/a
ZEST RESTAURANT AND MARKET,
a Florida limited liability company
on behalf of itself and all
others similarly situated,

       Plaintiffs,

v.

CERTAIN UNDERWRITERS AT LLOYD'S
LONDON Subscribing to Contract Number
B0429BA1900350 Under Collective
Certificate Endorsement 350OR100802,

       Defendants.

_____/

**CLASS ACTION**

**JURY DEMAND**

## CLASS ACTION COMPLAINT

*I DONALD J. TRUMP, President of the United States, by the authority vested in me by the Constitution and the laws of the United States of America, including sections 201 and 301 of the National Emergencies Act (50 U.S.C. 1601 et seq.) and consistent with section 1135 of the Social Security Act (SSA), as amended (42 U.S.C. 1320b-5), do hereby find and proclaim that the COVID-19 outbreak in the United States constitutes a national emergency, beginning March 1, 2020*

- President Donald J. Trump Proclamation on Declaring a National Emergency Concerning the

Novel Coronavirus Disease (COVID-19) Outbreak.

*In concert with the efforts of President Trump and the White House Corona virus Task Force to fight COVID-19, and based on guidance provided by Florida Surgeon General and State Health Officer, Dr. Scott Rivkees, all persons in Florida shall limit their movements and personal interactions outside of their home to only those necessary to obtain or provide essential services or conduct essential activities.*

- Florida Governor Rick DeSantis, Office Of The Governor Executive Order Number 20-91.

Plaintiff, Sun Cuisine, LLC d/b/a Zest Restaurant and Market, on behalf of itself and all others similarly situated, brings this action against Certain Underwriters at Lloyd's London Subscribing to Contract Number B0429BA1900350 under Collective Certificate Endorsement 350OR100802 (collectively, "Underwriter Defendants") for a declaratory judgment of rights and obligations under a contract of insurance and for Underwriter Defendants' anticipated breach of an insurance policy by denying business interruption coverage, extra expense coverage, and additional coverages to Plaintiff and similarly situated all-risk commercial property insurance policyholders who have suffered enormous business income losses and related covered expenses resulting from the national emergency and resulting economic lock down enacted in almost every state in the nation due to the COVID-19 pandemic, and states:

## I.      **INTRODUCTION**

1.      On March 11, 2020, World Health Organization Director General Tedros Adhanom Ghebreyesus declared the COVID-19 outbreak a worldwide pandemic: "WHO has been assessing this outbreak around the clock and we are deeply concerned both by the alarming levels of spread and severity, and by the alarming levels of inaction.  We have therefore made the assessment that COVID-19 can be characterized as a pandemic."[1]

2.      On March 16, 2020, President Donald J. Trump, the Centers for Disease Control and Prevention ("CDC"), and members of the White House Coronavirus Task Force issued guidance to the American public, styled as "30 Days to Slow the Spread," to arrest the spread of COVID-19. This guidance advised individuals to adopt far-reaching social distancing measures,

---

[1]  *See*  https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-COVID-19---11-march-2020

such as working from home, avoiding shopping trips and gatherings of more than 10 people, and staying away from bars, restaurants, and food courts.[2]

3.      Following this presidential advice, many state government administrations and local civil authorities across the nation enacted measures to protect the health and safety of their residents, and the national population, from the person to person and surface to person spread of this new coronavirus and control the number of individuals who may succumb to COVID-19. As a result, many governmental entities entered civil authority orders suspending, or severely curtailing business operations of non-essential businesses that either interact with the public or provide gathering places for the individuals and encouraging everyone in the nation to stay-at-home or shelter-in-place.  Currently, almost all states within the U.S. have issued some sort of "stay-at-home" order and ordered private non-essential business operations that interact with the public to close or drastically cut back operations at their property.

4.      The result of these pervasive restrictions and prohibitions has been catastrophic for the economy, especially small businesses like restaurants and other food and beverage service establishments, as well as retail stores, entertainment venues, and other small, medium, and large businesses  that have been forced to close, furlough employees, and endure a sudden shutdown of cash flow that threatens their very survival.

5.      Many businesses insure against such catastrophic events like the current unforeseen COVID-19 pandemic through all-risk commercial property insurance policies. These policies promise to indemnify the policyholder for actual business income losses incurred when business operations are involuntarily suspended, interrupted, or curtailed by "direct physical loss of or

---

[2]   *See*   https://www.whitehouse.gov/wp-content/uploads/2020/03/03.16.20_coronavirus-guidance_8.5x11_315PM.pdf.

1261543

damage to" the property or when access to the premises is prohibited by a civil authority order issued because of damage to nearby property.  This coverage is commonly known as "business interruption coverage" or "business income loss and extra expense coverage" and is regularly included in common standard form all-risk commercial property insurance policies either within the body of the coverage provisions for the insured property or by way of separate endorsement.

6.     The Underwriter Defendants, and most insurance companies who have issued all-risk commercial property insurance policies with business interruption coverage, are denying the obligation to pay for business income losses and other covered expenses incurred by policyholders for the physical loss of or damage to the insured property from this unprecedented  national emergency declared or for loss of business income sustained as the result of measures put in place by the civil authorities to stop the rapid spread of COVID-19 among the population.

7.     This action seeks a declaratory judgment that affirms that the national emergency declared over the spread of COVID-19 constitutes physical loss or damage to the insured property, triggering coverage under  business income loss and extra expense coverage provisions, and generally under the "all-risk" provisions of the standardized policies.

8.     In addition, this action seeks a declaratory judgment affirming that the orders by civil authorities to close non-essential business that resulted from the national COVID-19 emergency  triggers coverage under the civil authority coverage provision

9.     In addition, this action brings a claim against the Underwriter Defendants for their anticipatory breach of their contractual obligation under all-risk commercial property insurance policies to indemnify Plaintiff and others similarly situated for business losses, extra expenses, and other related losses resulting from physical loss of or damages to the insured property and actions taken in reaction to the national COVID-19 emergency by civil authorities.

4

10.     Plaintiff brings this action on behalf of a proposed class of policyholders who paid premiums in exchange for all-risk commercial property insurance policies that include lost business income, extra expense and civil authority coverages and do not include exclusions for pandemics or presence of viruses.

## II.     JURISDICTION AND VENUE

11.     This is an action asserting class action claims for declaratory relief and damages from the anticipatory breach of all-risk commercial property insurance policies issued by the Underwriter Defendants.

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 2201 and 2202 and is authorized to grant declaratory judgment under these statutes and pursuant to Federal Rule of Civil Procedure 57.

13.     This Court also has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA") (*codified in* 28 U.S.C. §§ 1332, 1453, 1711–1715).  Diversity exists among the Plaintiff and Defendants, there are more than one hundred members of the putative Class, and the amount in controversy exceeds $5 million.  28 U.S.C. § 1332(d)(2).  In determining whether the $5 million amount in controversy requirement of 28 U.S.C. § 1332(d)(2) is met, the claims of the putative Class members are aggregated.  28 U.S.C. § 1332(d)(6).

14.     This Court also has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

15.     Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred here, and the Underwriter Defendants transact business, engaged in misconduct, or may be found in this District.

1261543

16.     All conditions precedent to this action have occurred, been performed, or have been waived.

### III.     THE PARTIES

17.     Plaintiff, Sun Cuisine, LLC d/b/a Zest Restaurant and Market is a Florida limited liability company authorized to do business and headquartered at 200 South Biscayne Blvd., Suite 200, Miami, FL 331331.

18.     Plaintiff owns, operates, manages and controls restaurants and related food and beverage operations at 200 South Biscayne Blvd., Suite 100 & 200 Miami, FL 33131.

19.     On or about February 23, 2020, Defendant Underwriters issued commercial property insurance policy no. 350TA100802 to Plaintiff.  *See* **Exhibit A**.

20.     Plaintiff has provided notice to the Underwriter Defendants of a claim for its lost business income and other expenses incurred pursuant to the coverage provisions in the policy.

21.     Defendant Underwriters at Lloyd's London is composed of syndicates of individual underwriters that share respective and several liability under issued insurance policies.

22.     Upon information and belief, the liabilities under insurance policy no. 350TA100802 are shared among a syndicate of Certain Underwriters at Lloyd's London, subscribing to Contract Number B0429BA1900350 under Collective Certificate Endorsement 350OR100802.

### IV.     FACTUAL ALLEGATIONS

#### A.  The Global COVID-19 Pandemic

23.     Coronaviruses are a type of virus that often cause respiratory diseases in humans. In the fall of 2019, a new mutation of coronavirus was detected in China and thought to have originated in a "wet market" in Wuhan, China that sells exotic animals for food consumption.

1261543

24.     The new virus variation has biological similarities to a coronavirus known as Severe Acute Respiratory Syndrome, and more commonly referred to by the acronym SARS.  The World Health Organization has named the new virus SARS-CoV-2, and it has become known as COVID-19, short for coronavirus disease that developed in 2019  as a respiratory illness in humans exposed to the virus.

25.     Within months of COVID-19 being identified and named, the virus quickly spread from China to other parts of the world, including the United States.  On March 11, 2020, World Health Organization Director, General Tedros Adhanom Ghebreyesus, declared the COVID-19 outbreak a worldwide epidemic of a virus for which humans have no natural immunity.  In other words, a pandemic.

26.     Vaccines are prophylactic treatments that protect against particular viruses.  Unlike influenza, there is no vaccine or other preventive substance to stimulate the production of antibodies in humans to provide immunity against COVID-19.  To date, it has been reported that almost 213,000 people have died worldwide.  In the United States alone, over 57,000 have died from COVI-19 and over one million people confirmed infected with the coronavirus.[3]  These numbers are expected to grow exponentially and have taxed the United States' health care delivery system to near collapse; the simultaneous overflow of critically ill patients combined with a scarcity of ventilators for patients and personal protective equipment for health care providers is stretching the capacity of hospitals to the breaking point.

27.     Without a vaccine to protect against the entire national population contracting COVID-19, effective control of the virus outbreak relies on measures designed to reduce human-

---

[3] *See* https://www.worldometers.info/coronavirus/ (last visited April 9, 2020).

to-human and surface-to-human exposure.  Recent information on the CDC's website states that the virus spreads when people are within 6-feet of each other, or when a person comes in contact with a surface or object that has the virus on it.[4]  Various other sources state that close contact with a person with the virus or surfaces where the virus is present, can transmit the virus.[5]

28.     Transmission of the coronavirus is particularly acute in places the public normally gathers to socialize, eat, drink, shop, be entertained, and go for recreation.  This is why the CDC recommends that, in viral outbreaks, individuals who are infected stay at home and those who are not sick engage in preventative measures.  Some such measures include constant hand washing and the avoidance of activities that might bring individuals into close proximity with people injected with the virus, or surfaces where the virus resides.   However, because these recommendations have proven ineffective to minimize the spread of COVID-19, governments have elevated containment efforts through national and state orders of emergency. Civil authorities have in unison issued orders closing or severely curtailing operations at non-essential business establishments, including restaurants, bars, hotels, theaters, personal care salons, gyms, and schools, and mandated social distancing among the population.  This has caused the cancelation of sporting events, parades, and concerts, the closure of amusement parks, and substantial travel restrictions.  In addition, to conserve medical supplies, orders have been issued prohibiting the

---

[4]     *See*        https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-COVID-spreads.html

[5] *See Persistence of coronaviruses on inanimate surfaces and their inactivation with biocidal agents*, Vol. 104, Kemp., G., et al., Journal of Hospital Infection, No. 3, March 2020, pages 246-251 (remains infectious from 2 hours to 28 days depending on conditions); see also https://www.ucsf.edu/news/2020/02/416671/how-new-coronavirus-spreads-and-progresses-and-why-one-test-may-not-be-enough (doorknobs and table tops can contain the virus); https://www.nytimes.com/2020/03/02/health/coronavirus-how-it-spreads.html (virus can remain on metal, glass and plastic for several days).

performance of non-urgent or non-emergency elective medical procedures and surgeries, forcing the suspension of operations at many medical, surgical, therapeutic, and dental practices.

29.     As COVID-19 nationwide spread increased despite social distancing restrictions, states enacted more even more draconian measures.  For instance, in Florida, Governor Ron DeSantis has issued an Executive Order closing restaurants (other than for deliveries), bars, taverns, pubs, night clubs, banquet halls, cocktail lounges, cafeterias, movie theaters, concert houses, auditoriums, playhouses, bowling alleys, arcades, gymnasiums, and fitness studios.  On March 25, 2020, Miami-Dade County Mayor Carlos Gimenez issued an emergency order restricting hotels, motels and lodging facilities from accepting any occupants.

30.     The COVID-19 pandemic is tantamount to a "natural disaster".  Like other specific disasters, such as hurricanes or earthquakes, it involves substantial damage to property, hardship, suffering, and loss of life.

31.     Unsurprisingly, already, at least one State Supreme Court has already recognized, in *Friends of DeVito v. Wolf*, that policyholders' business losses resulting from the pandemic are indistinguishable from those caused by earthquakes, fires and the other casualty events for which property-based insurance coverage has always been intended to provide coverage:

> We agree with Respondents that the COVID-19 pandemic qualifies as a "natural disaster" under the Emergency Code...

2020 Pa. LEXIS 1987, at *31 (Pa. April 13, 2020).

**B.   The Underwriter Defendants' Standard Uniform All-Risk Commercial Property Insurance Policies**

32.     The Underwriter Defendants' common standard form insurance policies issued to Plaintiff and the Class members are "all risk" commercial property insurance policies which cover loss or damage to the covered premises resulting from all risks other than those expressly excluded.

9

33.     The Underwriter Defendants use standard common  form insurance policies issued by the Insurance Services Office (ISO), an insurance advisory organization that provides statistical and actuarial information to businesses and provides ISO commercial property forms to insurance companies for use in commercial property insurance policies.

34.     These commercial property insurance forms include a standard policy form titled "Business Income (and Extra Expense) Coverage Form." This form is identified by the ISO under common form number "CP 00 30."

35.     Under the Building and Personal Property Form (CP 00 10), Coverage is defined as:

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulted from any Covered Cause of Loss.

36.     Under the Business Income Coverage Form (CP 00 30) coverage is provided as follows:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations.  The loss or damage must be caused by a Covered Cause of Loss.

37.     The provision for "Additional Coverages-Civil Authority" provides as follows:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both the following apply: (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and (2) the action of civil authority is taken in response to dangerous physical conditions resulting from

1261543

the damage or continuation of the Covered Cause of Loss that
caused the damage or the action is taken to enable a civil authority
to have unimpeded access to the damaged property.

38.     Plaintiff and all similarly situated Class members have suffered a direct physical

loss of their insured property due to the national COVID-19 emergency and lock down of the

economy and resulting civil authority' orders.

**C.  Plaintiff's Factual Allegations**

39.     On February 23, 2020, the Underwriter Defendants issued a standard form ISO all-

risk commercial property insurance policy to Plaintiff under which Plaintiff agreed to make

premium payments in exchange for the Underwriter Defendants' promise to indemnify Plaintiff

for losses including, but not limited to, business income losses at the insured properties.

40.     The insured properties are defined in the policy, but are generally described as a

restaurant location in Miami, Florida: 200 S Biscayne Blvd, Ste 100 & 200 Miami, FL 33131. .

41.     The policy, like all Class members' policies, is an all-risk commercial property

insurance policy that provides coverage for physical loss of or damage to the insured property from

all risks unless expressly excluded by language in the body of the policy or through a separate

exclusion endorsement.  There is no exclusion in these standard policies for business interruption

caused by a declaration of a national emergency and urgent lock down of non-essential businesses

and at-home quarantine of the vast majority of the national population due to a global pandemic.

42.     Plaintiff's policy provides coverage between the periods of 4February 23 2020, and

February 23, 2021, and is in full effect as Plaintiff has faithfully paid the premiums due which

Underwriter Defendants have accepted.

43.     Plaintiff has paid the policy premiums to the Underwriter Defendants specifically

to provide coverage for lost business income and extra expenses in the event of an involuntary

business interruption as the result of physical loss of or damage to the insured properties or for

loss resulting from civil authority orders, and had the reasonable expectation that coverage would

be provided for risks that were not expressly excluded

44.     On March 16, 2020, Miami-Dade County Mayor Carlos Gimenez issued

Emergency Order 02-20 restricting operating times for all restaurants within Miami-Dade County

to 6 am to 11 pm other than for delivery.

45.     On March 17, 2020, Governor Ron DeSantis issued Executive Order 20-68 further

restricting restaurant operations in the State of Florida.  On the same day, Miami-Dade County

Mayor Carlos Gimenez issued Emergency Order 03-20 closing all restaurants in Miami-Dade

County other than for delivery.  These closings and restrictions remain in effect.

46.     Then, on March 30, 2020 Governor Ron DeSantis issued Executive Order 20-69,

explicitly limiting access to businesses in South Florida:

> I hereby order Miami-Dade County, Broward County, Palm Beach County and
> Monroe County to restrict public access to businesses and facilities deemed non-
> essential pursuant to the guidelines established by Miami-Dade County pursuant to
> its March 19, 2020 Emergency Order 07-20, and as modified by subsequent
> amendments and orders prior to the date of this order.

47.     Other similar orders have been issued that close or restrict access to all non-

essential business operations or prohibit public access to the property of non-essential businesses

where the individuals gather in close proximity to each other.

48.     The civil authority orders expressly state that the closing of non-essential

businesses, reductions in permitted operating hours, and social distancing restrictions placed on

the public are necessary emergency measures to protect the health and safety of all residents in the

nation intended to stop the spread of COVID-19 through human-to-human and surface-to-human

contact with the virus.

12

49.     The nature of Plaintiff's business is food and beverage service to the public and Plaintiff's property is a place where individuals socialize and gather in close proximity.  As a direct result of the existence of the national COVID-19 emergency Plaintiff has a physical loss of its property for regular business operations including its food and beverage operations other than for take-out and delivery.  The physical loss of its property has resulted in significant business income loss and other expenses.

50.     Plaintiff has faithfully paid the premiums and the Underwriter Defendants have accepted payment and as such are obligated to honor their contractual duty to provide coverage for the business losses, extra expenses, and other expenses suffered by Plaintiff.

51.     Upon information and belief, the Underwriter Defendants have no intention of providing any coverage to Plaintiff under the policy due to any business income losses or expenses incurred by Plaintiff due to the national COVID-19 emergency and resulting civil authority orders.

**D.   The COVID-19 Pandemic has Affected Policyholders Nationwide.**

52.     The ease of exposure to this coronavirus and rapid spread of COVID-19 is physically causing the loss of private commercial property in Miami-Dade County, the State of Florida and throughout the United States, and threatening the very survival of thousands of restaurants, retail establishments, and other businesses that have had their business operations suspended or curtailed due to the national COVID-19 emergency and resulting  civil authority orders.

53.     All but seven states have enacted "stay-at-home" orders, thirty-five states have closed all non-essential businesses with other states enacting measures to curtail business

operations, all fifty states have closed schools, and all but one state has closed restaurants and bars for services other than take-out and delivery.[6]

54.    Upon information and belief, the Underwriter Defendants have no intention of providing any coverage or indemnification under the policies to any policyholder if the business income losses and expense relate to the national COVID-19 emergency  despite the absence of an applicable exclusion for a national emergency and lock down of non-essential businesses..

55.    A bipartisan group from the U.S. House of Representatives recently sent a letter to various insurance industry trade groups requesting that their members recognize financial losses relating to COVID-19 under the standard business interruption coverage.  In response, the industry trade groups stated: "Business interruption policies do not, and were not designed to, provide coverage against communicable diseases such as COVID-19."[7]  Upon information and belief, the Underwriter Defendants belong to and support the trade groups' position.

56.    In addition, many states' departments of insurance have issued advisories to business owners that COVID-19 is not an insured peril and there will be no coverage for business interruption.  This is disinformation being published to discourage business owners from filing business interruption coverage claims, and ignores the national emergency proclaimed by the President.

57.    For instance, Arkansas Insurance Department Bulletin No. 9-2020 states that "In most BII policies, coverage is triggered when the policyholder sustains physical damage to insured property caused by a covered peril resulting in quantifiable business interruption loss . . .viruses

---

[6]    *See*    https://www.kff.org/health-costs/issue-brief/state-data-and-policy-actions-to-address-coronavirus/.

[7] *See* https://www.insurancejournal.com/news/national/2020/03/20/561810.htm

and disease are typically NOT an insured peril unless added by endorsement." (emphasis in the original).[8]

58.    The South Carolina Department of Insurance issues "Guidance" on business interruption insurance stating that under the business income policy, there likely is no coverage from losses occurring as a result of a virus.[9]

59.    The insurance industry is also actively advising Insurance Commissioners that they do not intend to provide coverage for business interruption related to COVID-19.  As a result, many small businesses that maintain commercial multi-peril insurance policies with business interruption coverage may believe that they may have large uninsured losses because they see similar information from the insurance industry stating that such policies do not cover the national COVID-19 emergency.

60.    Along these same lines, the State of Connecticut Insurance Department, Maryland Insurance Administration and the West Virginia Office of the Insurance Commissioner issued nearly identical notices supporting the insurance companies' reasons for denying business interruption claims stating that the potential losses from such perils [like COVID-19] are so extreme that providing coverage would jeopardize the financial solvency of property insurers.[10]

---

[8] *See*  https://insurance.arkansas.gov/uploads/resource/documents/9-2020.pdf

[9] *See* https://www.doi.sc.gov/948/COVID-19.

[10]*See*   https://portal.ct.gov/CID/Coronavirus/Business-Interruption-Insurance-Notice; https://insurance.maryland.gov/Pages/newscenter/NewsDetails.aspx?NR=2020256; https://www.wvinsurance.gov/Portals/0/pdf/pressrelease/20-08%20Business%20Interruption%20Insurance.pdf?ver=2020-03-26-222830-620.

61.     John F. King, Insurance and Safety Fire Commission for the State of Georgia issued Bulletin 20-EX-3 stating that losses from COVID-19 are excluded losses.[11]  Vicki Schmidt, Kansas Insurance Department Commission issued a similar Bulletin stating it was her "understanding it is unlikely that a business policy would cover losses related to COVID-19."[12]

62.     Other state governments anticipate that insurance companies will breach their obligation to provide coverage for business losses due to the national COVID-19 emergency and have introduced bills requiring every insurance policy insuring against physical loss of or damage to property, which includes the loss of use and occupancy, be construed to include, among other covered perils, coverage for business interruption due to global, national, state and local measures needed to curtail COVID-19.[13]

63.     Many civil authority orders have made specific findings that the COVID-19 pandemic is a national and state emergency that has caused the loss of use of or damage to property.

64.     Plaintiff seeks a declaratory judgment that the national COVID-19 emergency constitutes physical loss of the insured property triggering  the business income loss and extra expense coverages provided in common standard commercial property insurance policies with no exclusions to coverage for a national emergency.

65.     Plaintiff seeks a declaratory  judgment that  the measures put into place by civil authorities prohibiting access to Plaintiff's and similarly situated Class members' property trigger the civil authority coverage provided in these same policies.

---

[11] *See* https://www.oci.ga.gov/ExternalResources/Announcements/Bulletin-3172020-1619.pdf.

[12] *See* https://insurance.ks.gov/documents/department/COVID19-FAQ.pdf.

[13] *See* House Bill No. 858, State of Louisiana House of Representatives.  Similar legislation has been introduced in Massachusetts (Senate Bill Senate Docket. 2888); New Jersey (Assembly No. 3844); Sate of New York (Assembly 10226); and Ohio (House Bill No. 589).

1261543

## V.     CLASS ACTION ALLEGATIONS

66.     Plaintiff brings this lawsuit pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of itself and all other persons similarly situated Procedure 23(a), b(2), and (b)(3).

67.     The Nationwide Class is defined as:

> All entities who have entered into standard form all-risk commercial property insurance policies with the Underwriter Defendants, where such policies provide for business income loss and extra expense coverage and do not exclude coverage for a national emergency due to a pandemic, and who have physical loss of or damage to the insured property due to the national COVID-19 emergency  and resulting civil authority orders.

68.     The Florida Subclass is defined as:

> All Florida entities who have entered into standard form all-risk commercial property insurance policies with the Underwriter Defendants, where such policies provide for business income loss and extra expense coverage and do not exclude coverage for a national emergency due to a pandemic, and who have physical loss of or damage to the insured property due to the national COVID-19 emergency  and resulting civil authority orders.

69.     Excluded from each class are the Underwriter Defendants, their employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

70.     Plaintiff reserves the right to modify, expand, or amend the definitions of the proposed Classes following the discovery period and before the Court determines whether class certification is appropriate.

71.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of its claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

1261543

**Numerosity**

72.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1).   The Class numbers at least in the thousands and consists of geographically dispersed business entities who are insured for business interruption losses.   The Underwriter Defendants sell a large number of insurance policies in the state of Florida and in most if not all the other 49 states and therefore joinder of the Class members is impracticable.

73.     The identity of Class members is ascertainable, as the names and addresses of all Class members can be identified in the Underwriter Defendants' or their agent's books and records. Plaintiff anticipates providing appropriate notice to the certified Class in compliance with Fed. R. Civ. P. 23(c)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

**Typicality**

74.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiff's claims are typical of the claims of each of the Class members, as all Class members were and are similarly affected by the nationwide spread of the coronavirus into all 50 states and their claims arise from the same standard form all-risk commercial property insurance policies entered into with the Underwriter Defendants.   Each Class member's insurance policy contains the same ISO-issued form providing coverage for business income loss and other related expenses. None of the forms exclude coverage due to a national emergency, global pandemic or presence of a virus.   As such, a declaratory judgment as to the rights and obligations under Plaintiff's policy will address the rights and obligations of all Class members, and Plaintiff's claim of anticipatory breach by Underwriter Defendants is typical of the claims of each Class member based upon information

18

from the insurance industry that claims submitted for business interruption coverage will be denied.

## Adequacy of Representation

75.     Plaintiff is committed to prosecuting the action, will fairly and adequately protect the interests of the members of the Class, and has retained counsel competent and experienced in class action litigation, including litigation relating to insurance policies.  Plaintiff has no interests antagonistic to or in conflict with other members of the Class.  Plaintiff anticipates no difficulty in the management of this litigation as a class action.

## Commonality

76.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) because there are questions of law and fact that are common to the class.  These common questions predominate over any questions affecting only individual Class members.  The questions of law and fact common to the Class include, but are not limited to:

    a.  Whether there is an actual and bona fide controversy between Plaintiff and Underwriter Defendants as to the rights, duties, responsibilities, and obligations of the parties under the business interruption coverage provisions contained in common standard commercial property insurance policies;

    b.  Whether the nationwide COVI-19 emergency caused physical loss of or damage to covered premises;

    c.  Whether the civil authority orders prohibiting access to insured premises due to the national COVID-19 emergency triggers business income loss under civil authority coverage contained in common standard commercial property insurance policies;

    d.  Whether the national COVID-19 emergency and civil authority orders caused a period of restoration to begin for premises insured for business income loss and extra expenses under common standard commercial property insurance policy;

e.   Whether civil authority orders resulting from the national COVID-19 emergency constitutes a prohibition of access to the insured property under common standard commercial insurance policies;

f.   Whether the national COVID-19 emergency triggers "additional coverages" under common standard commercial property insurance policies;

g.   Whether Plaintiff and the Class members suffered damages, or will suffer damages, as a result of the anticipatory breach by the Underwriter Defendants;

h.   Whether further and necessary relief, including damages, is warranted under 27 U.S.C. §2202 for Plaintiff and Class members; and

i.   Whether Plaintiff and Florida Subclass members are entitled to an award of attorney fees pursuant to Fla. Stat. §627.428.

**Superiority/Predominance**

77.   This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3).  A class action is superior to other available methods for the fair and efficient adjudication of the rights of the Class members.  The joinder of individual Class members is impracticable because of the vast number of Class members who have entered into common  standard form commercial property insurance policies with the Underwriter Defendants.

78.   Because a declaratory judgment as to the rights and obligations under common standard commercial property insurance policies will apply to all Class members, most or all Class Members would have no rational economic interest in individually controlling the prosecution of specific actions.  The burden imposed on the judicial system by individual litigation, and to the Underwriter Defendants, by even a small fraction of the Class members, would be enormous.

79.   In comparison to piecemeal litigation, class action litigation presents far fewer management difficulties, far better conserves the resources of both the judiciary and the parties, and far more effectively protects the rights of each Class member.  The benefits to the legitimate interests of the parties, the court, and the public resulting from class action litigation substantially

outweigh the expenses, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation. Class adjudication is simply superior to other alternatives under Fed. R. Civ. P. 23(b)(3)(D). Class treatment will also avoid the substantial risk of inconsistent factual and legal determinations on the many issues in this lawsuit.

80.     Plaintiff is unaware of any obstacles likely to be encountered in the management of this matter that would preclude its maintenance as a class action. Rule 23 provides the Court with the authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiff or on its own determination, certify nationwide and statewide classes for claims sharing common legal questions; utilize the provisions of Fed. R. Civ. P. 23(c)(4) to certify particular claims, issues, or common questions of law or of fact for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Fed. R. Civ. P. 23(c)(5) to divide any Class into subclasses.

### Requirements of Fed. R. Civ. P. (2) B(2)

81.     The Underwriter Defendants have acted or failed to act in a manner generally applicable to the class, thereby making appropriate declaratory relief with respected to the Class as a whole.

### VI.     CLAIMS

### COUNT I
### DECLARATORY JUDGMENT, 28 U.S.C. §§ 2201 and 2202
### On behalf of the Plaintiff and the Class Members

82.     Plaintiff incorporates by reference paragraphs 1 – 81 as though fully set forth herein.

83.     Under 28 U.S.C. §§ 2201 and 2202, this Court may declare the rights and other legal relations of the parties in dispute whether or not further relief is or could be sought.

1261543

84.     An actual and bona-fide controversy exists between the Plaintiff, the Class members and the Underwriter Defendants as to the rights and obligations under common standard commercial property insurance policies that provide coverage for business income loss and extra expense in that:

a.   Plaintiff and the Class members have incurred physical loss of or damage to covered property from the national COVID-19 emergency and resulting civil authority orders;

b.   Plaintiff and Class members have incurred business income loss and extra expenses due to the national COVID-19 emergency and the resulting civil authority orders;

c.   Due to the nature of their business operations, Plaintiff and Class Members have suffered an involuntary physical loss of or damage to insured property that resulted from the national COVID-19 emergency and resulting civil authority orders;

d.   Plaintiff contends that the national COVID-19 emergency triggers coverage under common standard commercial property insurance policies where the policy does not include an exclusion for a pandemic;

e.   Plaintiff further contends that the national COVID-19 emergency and resulting civil authority orders triggers "additional coverage" under common  standard commercial property insurance policies; and

f.   Upon information and belief, the Underwriter Defendants deny and dispute that the business income loss,  extra expense and civil authority and any other coverage provided for in common standard   commercial property insurance policies provides  coverage related to the national COVID-19 emergency.

85.     Plaintiff seeks a Declaratory Judgment on behalf of itself and all Class members that the common standard commercial property insurance policy provides coverage for unexpected and unexcluded causes of loss, including  business income loss and extra expenses due to the national COVID-19 emergency and the resulting civil authority orders where there is no exclusion for coverage for a pandemic.

86.     Plaintiff also seeks a Declaratory Judgment on behalf of itself and all Class members that the forced closures of their premises or curtailment of their operations due to orders from state or local civil authorities is a prohibition of access to their premises and triggers business income loss and extra expense coverage under common standard commercial property insurance policies.

87.     Federal Rule of Procedure 57 permits the Court to determine the existence or non-existence of any right, duty, power, liability, privilege, or of any fact upon which the parties' legal relations depend.

88.     The declaration sought with regard to the instant controversy is of a justiciable nature, does not amount to an advisory decree, and will settle the controversy between the parties and on behalf of all Class members because of the uniform nature of the Underwriter Defendants' insurance policies.

**WHEREFORE** Plaintiff requests that this Court enter a Declaratory Judgment declaring that the common standard form all-risk commercial property insurance policy provides for business income loss, extra expense, civil authority and additional coverages due to the national COVID-19 emergency and resulting civil authority order and for further necessary and proper relief including damages and an award of attorney fees under 28 U.S.C. §2202.

<div align="center">

**COUNT II**
**ANTICIPATORY BREACH OF CONTRACT**

</div>

89.     Plaintiff incorporates by reference paragraphs 1 – 81 as though fully set forth herein.

90.     Plaintiff and each Class member has a common standard commercial property insurance policy issued by the Underwriter Defendants.

<div align="center">23</div>

91.     Plaintiff and all similarly situated Class members have performed all their obligations as specified by the policy including the payment of all premiums due.

92.     Plaintiff and the Class members' insurance policies all contain standard form language that provide coverage for business income loss and extra expenses for enumerated perils as well as for unexpected and unexcluded causes of loss.

93.     The policies provide that the Underwriter Defendants will pay for the actual loss of business income due to the "suspension" of "operations."

94.     The policies also provide that the Underwriter Defendants will pay for any necessary expenses that Plaintiff and the Class members incur that they would not have incurred had there been no physical loss of or damage to their property.

95.     Plaintiff's and the Class members' common standard commercial property insurance policies further provide coverage for as well as the suspension of business operations due to closures caused by the action of civil authorities.

96.     As stated above, Plaintiff and Class members had to involuntarily close their insured premises to the public and cease or substantially reduce their operations due to the national COVID-19 emergency  and resulting measures put in place by civil authority orders and thus have incurred substantial business income losses and extra expenses.

97.     Upon information and belief, the Underwriter Defendants intend to refuse performance under the common standard  commercial property insurance policies.  Specifically, the Underwriter Defendants intend to deny or refuse to provide coverage for business income losses or extra expenses incurred related to the national COVID-19 emergency and resulting  civil authority orders.

1261543

98.     As a result of the Underwriter Defendants' repudiation or anticipatory breach of the insurance policies, Plaintiff and the Class members have suffered actual damages.

**WHEREFORE**, Plaintiff, on behalf of itself and all similarly situated Class members seeks compensatory damages resulting from the Underwriter Defendants' repudiation or anticipatory breach of contract and further seek all relief deemed appropriate by this Court, including attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of itself and all similarly situated individuals, demand judgment against the Underwriter Defendants as follows:

(1)     Declaring this action to be a proper class action maintainable pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure and declaring Plaintiff and its counsel to be representatives of the Class;

(2)     Issuing a Declaratory Judgment declaring the parties' rights and obligations under the all-risk commercial property insurance policies;

(3)     Awarding Plaintiff and the Class "further necessary and proper relief", including damages, in accordance with 28 U.S.C. §2202;

(4)     Awarding Plaintiff and the Class compensatory damages from the Underwriter Defendants' anticipatory breach of the insurance policies in an amount to be determined at trial, together with appropriate prejudgment interest at the maximum rate allowable by law;

(5)     Awarding Plaintiff and the Class costs and disbursements and reasonable allowances for the fees of Plaintiff's and the Class's experts, and reimbursement of expenses;

(6)     Awarding Plaintiff and Florida Subclass members attorneys' fees pursuant to Fla. Stat. § 627.428; and

(7)     Awarding such other and further relief the Court deems just, proper, and equitable.

## DEMAND FOR A JURY TRIAL

Plaintiff and the Class request a jury trial for any and all Counts for which a trial by jury is

permitted by law.

Respectfully submitted May 1, 2020.

<div style="margin-left:40%">

*/s/ Harley S. Tropin*
Harley S. Tropin, Esq.
Florida Bar No. 241253
hst@kttlaw.com
Benjamin Widlanski, Esq.
Florida Bar No.  1010644
bwidlanski@kttlaw.com
Gail A. McQuilkin, Esq.
Florida Bar No. 969338
gam@kttlaw.com
Javier A. Lopez, Esq.
Florida Bar No. 16727
jal@kttlaw.com
Robert Neary, Esq.
Florida Bar No. 81712
rn@kttlaw.com
**KOZYAK TROPIN & THROCKMORTON LLP**
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Tel: (305) 372-1800 / Fax: (305) 372-3508

*Counsel for Plaintiff*

Daniel Tropin, Esq.
Florida Bar No. 100424
tropin@kolawyers.com
Jonathan M. Streisfeld, Esq.
Florida Bar No. 117447
streisfeld@kolawyers.com
KOPELOWITZ OSTROW
FERGUSON WEISELBERG GILBERT
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Tel: 954-525-4100 / Fax:  954-525-4300

*Counsel for Plaintiff*

</div>

26

1261543