## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 1:20-cv-21827-GAYLES/OTAZO-REYES

**SUN CUISINE, LLC d/b/a**
**ZEST RESTAURANT AND**
**MARKET, individually and on behalf**
**of all others similarly situated**,

     Plaintiff,

v.

**CERTAIN UNDERWRITERS**
**AT LLOYD'S LONDON Subscribing to**
**Contract Number B0429BA1900350 Under**
**Collective Certificate Endorsement**
**350OR100802**,

     Defendants.
_____/

### **ORDER**

**THIS CAUSE** comes before the Court on Defendants Certain Underwriters at Lloyd's, London Subscribing to Policy No. 350TA100802's[1] Motion to Dismiss the Complaint (the "Motion") [ECF No. 11]. The Court has reviewed the Motion and the record, heard oral argument from counsel on November 12, 2020, and is otherwise fully advised. For the reasons that follow, the Motion is granted in part.

### **BACKGROUND**[2]

Plaintiff Sun Cuisine, LLC d/b/a Zest Restaurant and Market owns, operates, manages, and controls restaurants and related food and beverage operations at a location in Miami, Florida. On

---

[1] Defendants were misidentified in this action as "Certain Underwriters at Lloyd's London Subscribing to Contract Number B0429BA1900350 Under Collective Certificate Endorsement 350OR100802."

[2] As the Court is proceeding on a Motion to Dismiss, it takes Plaintiff's allegations in the Amended Complaint as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam).

February 23, 2020, Defendants issued a standard form ISO all-risk commercial property insurance policy (the "Policy") to Plaintiff under which Plaintiff agreed to make premium payments in exchange for the Defendants' promise to indemnify Plaintiff for losses. Those losses include, but are not limited to, business income losses at the insured properties. The Policy provides coverage for the period between February 23, 2020, and February 23, 2021.

Under the Policy, the general coverage provision states: "[w]e will pay for *direct physical loss of or damage to* Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." [ECF No. 1-1 at 25] (emphasis added). The Policy includes a standard policy form titled "Business Income (and Extra Expense) Coverage Form," which provides for business income losses and states in relevant part:

> A. **Coverage**
>
>   1. **Business Income**
>
>   . . . .
>
>   We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by *direct physical loss of or damage to* property at premises which are described in the Declarations and for which a Business Income Limit [o]f Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

*Id.* at 41 (emphasis added).

The Policy also provides additional coverage for business income loss caused by actions of civil authority:

> 5. **Additional Coverages**
>
>   a. **Civil Authority**
>
>   . . . .
>
>   When a Covered Cause of Loss causes *damage to* property other than property at the described premises, we will pay for the actual loss of Business Income you

2

>sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
>>(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>>
>>(2) The action of civil authority is taken in response to *dangerous physical conditions* resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

*Id.* at 42 (emphasis added).

On March 17, 2020, to slow the spread of COVID-19, Miami-Dade County Mayor Carlos Gimenez issued Emergency Order 03-20 closing all restaurants in Miami-Dade County other than for delivery. On March 30, 2020, Governor Ron DeSantis issued Executive Order 20-69 restricting public access to businesses and facilities deemed non-essential, including restaurants in South Florida. As a result, Plaintiff involuntarily closed its insured premises to the public and ceased or substantially reduced its operations.

On May 1, 2020, Plaintiff filed this action seeking insurance coverage under the Policy for business interruption related to the COVID-19 pandemic. [ECF No. 1]. Plaintiff's Complaint consists of two counts: Declaratory Judgment (Count I) and Anticipatory Breach of Contract (Count II). For both counts, Plaintiff alleges that as a result of the national COVID-19 emergency, it suffered physical loss based on a suspension of its operations, restricted access to its property, and a loss of business income. On August 10, 2020, Defendants filed the instant Motion, [ECF No. 11], based on Plaintiff's failure to allege that any physical loss or damage was actual or tangible. Nor does Plaintiff allege that its property, or a nearby property subject to a civil authority order, was contaminated by COVID-19.

3

**LEGAL STANDARD**

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). "[T]he pleadings are construed broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff, *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). At bottom, the question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

**DISCUSSION**

Defendants seek dismissal with prejudice of Plaintiff's Complaint for three main reasons. First, Defendants argue that Plaintiff's allegations do not trigger coverage under the Policy. Specifically, Defendant's argue that the Complaint fails to allege either "direct physical loss of or damage to" the insured property or direct physical damage to a nearby property as to trigger coverage under the Policy's Business Income and Civil Authority provisions. Second, Defendants argue that COVID-19 falls within the Policy's microorganism and pollution exclusions. Lastly, Defendants argue that Plaintiff fails to meet its burden as Class Plaintiff of establishing the typicality and predominance requirements of Federal Rule of Civil Procedure 23.

"In insurance coverage cases under Florida law, courts look at the insurance policy as a whole and give every provision its 'full meaning and operative effect.'" *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004). "[I]nsurance contracts are construed according to their plain meaning," *Garcia v. Fed. Ins. Co.*, 473 F.3d 1131, 1135 (11th Cir. 2006) (citation omitted); that is, courts begin their analysis by looking at the "plain language of the policy, as bargained for by the parties," *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1186 (11th Cir. 2002) (citation omitted). Where coverage is in dispute, "an insured claiming under an all-risks policy has the burden of proving that the insured property suffered a loss while the policy was in effect." *Jones v. Federated Nat'l Ins. Co.*, 235 So. 3d 936, 941 (Fla. 4th DCA 2018). If the insured satisfies its burden, "the burden then shifts to the insurer to prove that the cause of the loss was excluded from coverage under the policy's terms." *Id.* (citations omitted).

To trigger coverage under the Business Income or Civil Authority provisions of the Policy, Plaintiff must prove that there was "direct physical loss of or damage to" the insured property or a nearby property while the Policy was in effect. There is no dispute that the alleged loss occurred while the Policy was in effect. Thus, a showing of direct physical loss of or damage to the property or a nearby property is the fundamental predicate to Plaintiff's claims. However, Plaintiff's Complaint fails to meet this burden.

As Plaintiff indicates, the definition of "direct physical loss of or damage to" is critical to determining the scope of the Policy's Business Income and Civil Authority coverage. [ECF No. 12 at 19]. Although the Policy does not define these terms, courts have. *See, e.g.*, *Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 879 (11th Cir. 2020) ("Florida's District Court of Appeals for the Third District has addressed the definition of 'direct physical loss[.]'"). "A 'loss' is the diminution of value of something []." *Id.* (citation omitted). Moreover, "direct physical" modifies both "loss" and "damage." Therefore, under the Policy, any "interruption in business must be

5

caused by some *physical problem* with the covered property . . . ." *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-CIV-22615, 2020 WL 5051581, at *7 (S.D. Fla. Aug. 26, 2020) (citation omitted). That is, the damage or loss must be actual. *Mama Jo's Inc.*, 823 F. App'x at 879 (citation omitted).

On its face, Plaintiff's Complaint fails to allege coverage under the plain language of the Policy. Plaintiff alleges suspension of its operations, restricted access to its property, and business income loss, but fails to allege a threshold requirement for coverage under the Policy: physical loss or damage to its property or any nearby property. Stated differently, Plaintiff's Complaint fails to clearly articulate its *actual* physical loss. While Plaintiff argues that a loss of functionality or intended use constitutes physical loss or damage, it is not supported by the plain language of the Policy or Florida law.

Plaintiff's allegations are strikingly similar to those in *Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*, No. 20-CIV-22833, 2020 WL 6392841 (S.D. Fla. Nov. 2, 2020). The district court there found that the plaintiff could not establish coverage under the plain language of the policy because the plaintiff failed to show that the COVID-19 pandemic and corresponding government response caused physical property loss and damage to the insured property. *Id.* at *9. Like the instant Complaint, the complaint there did not allege any actual or tangible physical harm to the covered property or another property in the immediate area. *Id.* at *8–9.

Plaintiff's allegations provide the Court no reason to deviate from the prevailing consensus in this Circuit and others regarding business interruption claims arising from the COVID-19 pandemic. *See, e.g.*, *Hillcrest Optical, Inc. v. Cont'l Cas. Co.*, No. 1:20-CV-275-JB-B, 2020 WL 6163142, at *7 (S.D. Ala. Oct. 21, 2020) (dismissing the plaintiff's complaint because "Plaintiff's loss of usability did not result from an immediate occurrence which tangibly altered its property – the [statewide] Order [postponing all medical procedures] did not immediately cause some sort of tangible alteration to Plaintiff's office" and therefore did not constitute direct physical loss); *Seifert*

*v. IMT Ins. Co.*, No. CV 20-1102 (JRT/DTS), 2020 WL 6120002, at *3 (D. Minn. Oct. 16, 2020) (finding that the plaintiff's "claims fail to fall within the permissible realm of 'direct physical loss,' as he cannot allege facts showing his properties were actually contaminated or damaged by the coronavirus."); *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known as Syndicate PEM 4000*, No. 8:20-CV-1605-T-30AEP, 2020 WL 5791583, at *5 (M.D. Fla. Sept. 28, 2020) (finding "no business income coverage and no civil authority coverage because the Amended Complaint fails to allege facts describing how the Property suffered any actual physical loss or damage."); *Malaube, LLC*, 2020 WL 5051581, at *8 (granting the defendant's motion to dismiss because "Plaintiff merely claims that two Florida Emergency Orders closed his indoor dining. . . . [T]his cannot state a claim because the loss must arise to actual damage. And it is not plausible how two government orders meet that threshold when the restaurant merely suffered economic losses – not anything tangible, actual, or physical."). The Court finds that Plaintiff's allegations, even if taken as true, do not plausibly show direct physical loss or damage to the insured property or any nearby property to trigger coverage under the Policy.[3] As Plaintiff may be able to cure this defect, the Complaint shall be dismissed without prejudice.

## CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants Certain Underwriters at Lloyd's, London Subscribing to Policy No. 350TA100802's Motion to Dismiss the Complaint, [ECF No. 11], is **GRANTED in part**.

2. Plaintiff Sun Cuisine, LLC d/b/a Zest Restaurant and Market's Complaint, [ECF No. 1], is **DISMISSED without prejudice**.

---

[3] Having not found coverage under the Policy, it is not necessary for the Court to determine whether any exclusions to the Policy apply or whether the class is properly certified.

3. Plaintiff may request leave to file an amended complaint on or before **January 20, 2021**. Failure to do so will result in the Court dismissing this action *with prejudice*.

4. This action is **CLOSED** for administrative purposes.

5. All pending motions are **denied as moot**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 28th day of December, 2020.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE