UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:20-cv-21827-GAYLES/OTAZO-REYES

SUN CUISINE, LLC d/b/a
ZEST RESTAURANT AND
MARKET, individually and on behalf
of all others similarly situated,

    Plaintiff,

v.

CERTAIN UNDERWRITERS
AT LLOYD'S LONDON Subscribing to
Contract Number B0429BA1900350 Under
Collective Certificate Endorsement
350OR100802,

    Defendants.
_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendants Certain Underwriters at Lloyd's, London Subscribing to Policy No. 350TA100802's[1] Motion to Dismiss the Amended Class Action Complaint (the "Motion") [ECF No. 46]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons that follow, the Motion is granted.

### BACKGROUND[2]

Plaintiff Sun Cuisine, LLC d/b/a Zest Restaurant and Market owns, operates, manages, and controls restaurants and related food and beverage operations at a location in Miami, Florida. On February 23, 2020, Defendants issued a standard form ISO all-risk commercial property insurance

---

[1] Defendants were misidentified in this action as "Certain Underwriters at Lloyd's London Subscribing to Contract Number B0429BA1900350 Under Collective Certificate Endorsement 350OR100802."
[2] As the Court is proceeding on a Motion to Dismiss, it takes Plaintiff's allegations in the Amended Complaint as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam).

1

policy (the "Policy") to Plaintiff under which Plaintiff agreed to make premium payments in exchange for Defendants' promise to indemnify Plaintiff for losses. Those losses include, but are not limited to, business income losses at the insured properties. The Policy provides coverage for the period between February 23, 2020, and February 23, 2021.

Under the Policy, the general coverage provision states: "[w]e will pay for *direct physical loss of or damage to* Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." [ECF No. 45-1 at 25] (emphasis added). The Policy includes a standard policy form titled "Business Income (and Extra Expense) Coverage Form," which provides for business income losses and states in relevant part:

> **A. Coverage**
>
> **1. Business Income**
>
>   . . . .
>
> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by *direct physical loss of or damage to* property at premises which are described in the Declarations and for which a Business Income Limit [o]f Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

*Id.* at 41 (emphasis added).

The Policy also provides additional coverage for business income loss caused by actions of civil authority:

> **5. Additional Coverages**
>
>   **a. Civil Authority**
>
>     . . . .
>
> When a Covered Cause of Loss causes *damage to* property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that

>prohibits access to the described premises, provided that both of the following apply:
>
>>(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
>>(2) The action of civil authority is taken in response to *dangerous physical conditions* resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

*Id.* at 42 (emphasis added).

On March 11, 2020, the World Health Organization declared the COVID-19 outbreak a worldwide pandemic. COVID-19 is a highly contagious virus, which can be transmitted from person-to-person, from surface-to-person, and through particles suspended in the air. On March 16, 2020, President Donald J. Trump, the Centers for Disease Control and Prevention ("CDC"), and members of the White House Coronavirus Task Force issued guidance to the American public to limit the spread of COVID-19. The transmission of COVID-19 is particularly acute in places where the public normally gathers to socialize, eat, and drink. Accordingly, this guidance advised individuals to adopt far-reaching social distancing measures such as limiting gatherings of more than ten people and staying away from bars, restaurants, and food courts.

Following this guidance, former Miami-Dade County Mayor Carlos Gimenez issued Emergency Order 03-20 on March 17, 2020, closing all restaurants in Miami-Dade County other than for delivery to slow the spread of COVID-19 through person-to-person and surface-to-person contact. On March 30, 2020, Governor Ron DeSantis issued Executive Order 20-69 restricting public access to businesses and facilities deemed non-essential, including restaurants in South Florida. As a result, Plaintiff was unable to welcome patrons into its restaurant and was required to drastically alter its property to reduce its operations to take-out and delivery.

On May 1, 2020, Plaintiff filed this action seeking insurance coverage under the Policy for business interruption related to the COVID-19 pandemic. [ECF No. 1]. On August 10, 2020, Defendants filed a Motion to Dismiss, arguing that Plaintiff failed to allege any physical loss or damage to the property. [ECF No. 11]. On December 28, 2020, the Court granted the Motion to Dismiss in part. [ECF No. 40]. Plaintiff filed its Amended Class Action Complaint on January 28, 2021, asserting two counts: (1) Declaratory Judgment (Count I) and (2) Anticipatory Breach of Contract (Count II). [ECF No. 45]. Plaintiff alleges that it suffered physical loss and damage to its property because COVID-19 altered the property to an unsatisfactory and highly dangerous state, unusable, inhabitable, and unfit for its intended purpose; this loss caused significant business income loss and extra expenses. On February 17, 2021, Defendants filed the instant Motion seeking dismissal of Plaintiff's claims.

## LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). "[T]he pleadings are construed broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff, *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). At bottom, the question is not whether the claimant "will ultimately prevail . . . but whether [its] complaint [is] sufficient to cross the

federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

## DISCUSSION

Defendants seek dismissal with prejudice of Plaintiff's Amended Complaint for two main reasons. First, Defendants argue that Plaintiff's allegations do not trigger coverage under the Policy. Specifically, Defendants argue that the Amended Complaint fails to allege either "direct physical loss of or damage to" the insured property or a nearby property as to trigger coverage under the Policy's Business Income and Civil Authority provisions. Second, Defendants argue that coverage is barred by the Policy's microorganism and pollution exclusions.

"In insurance coverage cases under Florida law, courts look at the insurance policy as a whole and give every provision its 'full meaning and operative effect.'" *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004). "[I]nsurance contracts are construed according to their plain meaning," *Garcia v. Fed. Ins. Co.*, 473 F.3d 1131, 1135 (11th Cir. 2006) (citation omitted); that is, courts begin their analysis by looking at the "plain language of the policy, as bargained for by the parties," *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1186 (11th Cir. 2002) (citation omitted). Where coverage is in dispute, "an insured claiming under an all-risks policy has the burden of proving that the insured property suffered a loss while the policy was in effect." *Jones v. Federated Nat'l Ins. Co.*, 235 So. 3d 936, 941 (Fla. 4th DCA 2018). If the insured satisfies its burden, "the burden then shifts to the insurer to prove that the cause of the loss was excluded from coverage under the policy's terms." *Id.* (citations omitted).

To trigger coverage under the Business Income or Civil Authority provisions of the Policy, Plaintiff must prove that there was "direct physical loss of or damage to" the insured property or a nearby property while the Policy was in effect. There is no dispute that the alleged loss occurred while the Policy was in effect. Thus, a showing of direct physical loss of or damage to the property

or a nearby property is the fundamental predicate to Plaintiff's claims. However, Plaintiff's Amended Complaint fails to meet this burden.

Plaintiff claims that the "omnipresence of the coronavirus" caused direct physical loss of the insured property and other nearby properties. The Policy does not explicitly define "direct physical loss or damage." As such, Plaintiff contends that the lack of definition in the Policy must be construed in Plaintiff's favor. However, where a term in a policy is not defined, courts use the plain meaning of the word. *Graspa Consulting, Inc. v. United Nat'l Ins. Co.*, No. 20-CIV-23245, 2021 WL 1540907, at *5 (S.D. Fla. Apr. 16, 2021); *see also Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 879 (11th Cir. 2020) ("Florida's [Third District Court of Appeal] has addressed the definition of 'direct physical loss[.]'"). "A 'loss' is the diminution of value of something." *Mama Jo's*, 823 F. App'x at 879 (citation omitted). Moreover, "direct physical" modifies both "loss" and "damage." Therefore, under the Policy, any "interruption in business must be caused by some *physical problem* with the covered property . . . ." *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-CIV-22615, 2020 WL 5051581, at *7 (S.D. Fla. Aug. 26, 2020) (citation omitted). Thus, "[a] direct physical loss contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so." *Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-CIV-23362-KMM, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018), aff'd, 823 F. App'x 868 (11th Cir. 2020).

Here, Plaintiff alleges that the presence of COVID-19 on the insured property physically altered the property from a satisfactory state to an unsatisfactory state, and Plaintiff had to make substantial physical changes to the property "including the reconfiguration of seating, installation of plexiglass shields and sanitizer dispensers, and the enhancement of air filtration systems in response to the threat of transmission of the coronavirus from those coming in and out of the

property." [ECF No. 45 ¶¶ 65, 66]. Courts in this Circuit have almost uniformly dismissed this type of allegation as insufficient to establish coverage.

As a threshold matter, "the mere presence of the virus on the physical structure of the premises" does not amount to "direct physical loss." *Mena Catering, Inc. v. Scottsdale Ins. Co.*, 512 F. Supp. 3d 1309, 1318 (S.D. Fla. 2021); *see also Carrot Love, LLC v. Aspen Specialty Ins. Co.*, 513 F. Supp. 3d 1364, 1367 (S.D. Fla. 2021) (dismissing the plaintiff's claims when the plaintiff alleged that the "presence of any COVID-19 particles on physical property such as countertops, tables and chairs, impaired their value, usefulness, and/or normal function causing the [p]laintiff to suffer a direct physical loss or damage that is covered under its policy with the [d]efendant."); *Runway 84, Inc. v. Certain Underwriters at Lloyd's, London*, No. 20-CIV-62257, 2021 WL 2767079, at *5 (S.D. Fla. Mar. 31, 2021) ("Plaintiffs' argument that the presence of COVID-19 made the property unsuitable for its intended purposes because it closed for business due to the pandemic does not establish the physical loss or damage required by the Policy.").

Secondly, the fact that Plaintiff had to reconfigure furniture and make physical alterations to the layout of the property to avoid contamination of COVID-19 does not qualify as physical loss or damage. *See, e.g.*, *Bourgier v. Hartford Cas. Ins. Co.*, No. 21-CIV-21053, 2021 WL 3603601, at *4 (S.D. Fla. Aug. 12, 2021) ("[E]ven if [Plaintiff's] salon physically changed, that is, [Plaintiff] moved the salon's furniture around, added hand sanitizer stations and plexiglass, or enhanced the air filtration system, it still cannot be said that there was actual damage to the property."); *Cafe La Trova LLC v. Aspen Specialty Ins. Co.*, No. 20-CIV-22055, 2021 WL 602585, at *9 (S.D. Fla. Feb. 16, 2021) ("[T]he Court is unpersuaded by Plaintiff's argument that damage caused by moving furniture and installing partitions is sufficient to trigger coverage for its business income losses."). While the Court is sympathetic to Plaintiff's situation, it declines to depart from the prevailing consensus in this Circuit.

Further, Plaintiff alleges that "the government orders that shutdown or curtailed Plaintiff's business operations were the direct result of [the] same direct physical loss or damage to property near Plaintiff's property caused by the physical presence of the coronavirus." [ECF No. 45 ¶ 92]. This allegation is insufficient for the reasons stated above—no physical loss or damage was caused by the presence of COVID-19. Thus, the Court finds that Plaintiff's allegations, even if taken as true, do not plausibly show direct physical loss or damage to the insured property or nearby property to trigger coverage under the Policy.[3]

## CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants Certain Underwriters at Lloyd's, London Subscribing to Policy No. 350TA100802's Motion to Dismiss the Amended Class Action Complaint, [ECF No. 46], is **GRANTED**.

2. Plaintiff Sun Cuisine, LLC d/b/a Zest Restaurant and Market's Amended Class Action Complaint, [ECF No. 45], is **DISMISSED with prejudice**.

3. All pending motions are **denied as moot**.

4. This case is **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 31st day of August, 2021.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

---

[3] Having found no coverage under the Policy, it is not necessary for the Court to determine whether any exclusions to the Policy apply.